**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS RODRIGUEZ, VANESSA RODRIGUEZ, MARITZA MALAVE, ALEX GARCIA, LUIS STALLWORTH, and CAROLINE BROWN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 1913 |
| v. | ) ) | |
| CITY OF CHICAGO, *et al.,* | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 30, 2009, Plaintiffs Marcus Rodriguez, Vanessa Rodriguez, Maritza MaLave, Luis Stallworth, Alex Garcia, and Caroline Brown brought the present seven-count First Amended Complaint alleging violations of their constitutional rights, as well as state law claims of malicious prosecution, intentional infliction of emotional distress, and indemnification, against Defendant Chicago Police Officers and the City of Chicago. On March 2, 2010, pursuant to the parties' stipulation to dismiss, the Court dismissed Plaintiff's due process claim as alleged in Count V of the First Amended Complaint against all Defendants with prejudice. (R. 64-1.) Also, in their response to Defendants' partial motion for summary judgment, Plaintiffs concede that their conspiracy claim as alleged in Count I should be dismissed, and thus the Court dismisses Count I against all Defendants with prejudice. (R. 70-1, Resp., at 1.)

Before the Court are the parties' cross-motions for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' summary judgment motion and denies Plaintiffs' summary judgment motion. In particular, the

Court grants Defendants' summary judgment motion and denies Plaintiffs' summary judgment motion concerning Plaintiffs' Fourth Amendment claims as alleged in Count II of the First Amended Complaint. The Court also grants Defendants' summary judgment motion as to Plaintiffs' state law malicious prosecution and intentional infliction of emotional distress claims as alleged in Counts V and VI of the First Amended Complaint. Because none of Plaintiffs' state law claims remain, the Court also dismisses with prejudice Plaintiffs' indemnification claim against the City of Chicago as alleged in Count VII of the First Amended Complaint. As such, the only remaining claim for trial is Marcus' excessive force claim against Defendant Officers Berg, Rooney, McGarry, and Porebski as alleged in Count III of the First Amended Complaint.[1] Therefore, Officers Askar, Sherlock, Rogus, and Gibbelina and the City of Chicago are no longer Defendants to this lawsuit.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue."

---

[1] Neither party moves for summary judgment as to Plaintiffs' excessive force claim as alleged in Count III of the First Amended Complaint. Plaintiffs concede, however, that they are not bringing their excessive force claim against Defendant Officers Askar, Sherlock, and Rogus. (R. 70-1, Resp., at 1.) Also, Plaintiffs do not dispute that the only officers who applied any force to effectuate Marcus' arrest were either Officers Berg, Rooney, McGarry, or Porebski, therefore, Officer Gibbelina is not a Defendant to Marcus' excessive force claim. (*See* Defs.' Stmt. Facts ¶ 52.)

*Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). Some of Plaintiffs' denials in their Rule 56.1(b)(3)(B) response do not properly cite to the record, and thus the Court disregards these responses because they do not comply with Rule 56.1, including the responses to ¶¶ 26, 41, 58, 61, and 78. *See Cady,* 467 F.3d at 1060; *Cichon*, 401 F.3d at 809-10.

## II.     Relevant Facts

On October 28, 2007, Defendant Officers John Rooney, Daniel Berg, Patrick McGarry, Matthew Rogus, Jamil Askar, Anthony Sherlock, John Gibbelina, and Joseph Porebski were

assigned to the Chicago Police Department's 17th District. (R. 57-1, Defs.' Rule 56.1 Stmt. Facts ¶ 5.) At that time, Officer Porebski was the supervising Lieutenant and non-Defendant Officer Donald Daniels was the supervising Sergeant of a tactical team within the 17th District, which included the other named Defendant Officers except for Officer Gibbelina. (*Id.* ¶¶ 6, 8(a).) The tactical team focuses on high crime areas. (*Id.* ¶ 7(a).)

At approximately 1:44 p.m on October 28, 2007, a Circuit Court of Cook County Judge signed a search warrant that authorized the search of Marcus Rodriguez and the premises described as 4856 N. Avers 1st Floor Apartment, Multi-Dwelling Building, Chicago, Illinois, Cook County. (*Id.* ¶ 7(b).) The warrant also authorized the seizure of cannabis; residency documents; any paraphernalia used to weigh, cut or mix drugs; money; and records detailing illegal drug transactions. (*Id.*) The warrant was based on Defendant Officers Askar's and Sherlock's investigation, and Officer Sherlock's complaint and affidavit. (*Id.*; R. 62-1, Pls.' Rule 56.1 Stmt. Facts ¶ 5.)

After the judge signed the warrant, the police officers held a briefing. (Defs.' Stmt. Facts ¶ 8(b).) At the briefing, the officers discussed assignments, point of entry, and how many occupants they might encounter while executing the search warrant. (*Id.*) After the briefing, Defendant Officers left the 17th District police station and proceeded to 4856 N. Avers in Chicago. (*Id.* ¶ 9.) The target location was a corner apartment building at the intersection of Avers and Ainslie. (*Id.* ¶ 10.) Upon arrival, the entry team went to the rear of the apartment building. (*Id.*) Thereafter, Officers Porebski, Daniels, Askar, Rogus, McGarry, Rooney, and Sherlock entered the apartment. (*Id.* ¶ 13; Pls.' Stmt. Facts ¶ 6.) Officer Gibbelina took a perimeter security position in the back yard and Officer Berg took a perimeter security position

in the front of the residence.  (Defs.' Stmt. Facts ¶ 14.)

Upon entering the apartment, the officers conducted a security sweep and encountered the target of the search warrant, Marcus Rodriguez, Sr.  (*Id.* ¶ 15.)  The officers detained and handcuffed Marcus Rodriguez, Sr. and also detained and handcuffed Plaintiff Maritza MaLave, who was the leaseholder of the apartment.  (*Id.* ¶ 16; Pls.' Stmt. Facts ¶ 7.)  Meanwhile, as the officers entered the apartment, Plaintiff Vanessa Rodriguez (hereinafter "Vanessa") was in the front hallway.  (Defs.' Stmt. Facts ¶ 17.)  A female officer identified herself as a police officer and then detained and handcuffed Vanessa in that same hallway.  (*Id.*)  The officers took Vanessa to the front stoop of the property and asked her basic identifying questions so that the officers could fill out a contact card.  (*Id.* ¶ 18.)  After the officers questioned Vanessa, they removed her handcuffs.  (*Id.*)  About ten to fifteen minutes later, MaLave joined Vanessa on the front stoop of the residence.  (*Id.* ¶ 19.)  MaLave was no longer handcuffed at that time.  (*Id.*)

After the officers conducted a security sweep of the residence, they began to search for contraband.  (Defs.' Stmt. Facts ¶ 20.)  Officers Sherlock and Askar searched the rear bedroom and discovered over 200 Ziploc bags – 27 of which contained suspect cannabis – bundled money, and other drug paraphernalia.  (*Id.* ¶ 21.)  Officer Porebski also observed electronic equipment that he thought might be connected to a rash of burglaries in the area.  (*Id.* ¶ 23.)  Officer Daniels, who was also aware of the recent burglaries, returned to the 17th District police station to review the burglary reports and further investigate the electronic equipment.  (*Id.* ¶¶ 25, 26; Pls.' Stmt. Facts ¶ 12.)  Officers Porebski and Daniels decided that they needed to secure the residence while Officer Daniels investigated the electronic equipment.  (Pls.' Stmt. Facts ¶ 14.)

At that point, Officers McGarry, Rooney, and Gibbelina left the apartment and proceeded to the neighborhood elementary school to determine whether it was close enough to the apartment to increase the level of the drug offense against Marcus Rodriguez, Sr. (Defs.' Stmt. Facts ¶ 27.) Meanwhile, the police arrested Marcus Rodriguez, Sr. as a result of finding narcotics in the apartment and Officers Rogus, Askar, and Sherlock returned to the 17th District police station to inventory the narcotics and process Marcus Rodriguez, Sr. (*Id.* ¶ 28; Pls.' Stmt. Facts ¶ 10.) Also, Officer Berg left his security position in the front of the residence and joined Officer Porebski inside the residence. (Defs.' Stmt. Facts ¶ 29.) Officer Berg's understanding at that time was that the officers who conducted the search had found stolen items and that there were a number of laptops in one of the bedrooms. (*Id.* ¶ 30.)

Approximately five minutes after Officer Berg entered the residence and while he was stacking the laptops, Plaintiff Marcus Rodriguez, Jr. (hereinafter "Marcus") entered the front foyer of the residence. (*Id.* ¶ 31; Pls.' Stmt. Facts ¶¶ 19, 20.) Thereafter, Marcus saw Officer Porebski in the living room after which Officer Porebski stated that a search warrant was being conducted and Marcus demanded to see the warrant. (Defs.' Stmt. Facts ¶ 32; Pls.' Stmt. Facts ¶ 23.) Officers Porebski and Berg both told Marcus and Plaintiff Luis Stallworth, who had also entered the apartment building, to leave. (*Id.* ¶ 36; Pls.' Stmt. Facts ¶¶ 23, 30.) Marcus and Stallworth then shouted obscenities. (Pls.' Stmt. Facts ¶ 27.) Marcus specifically shouted "Fuck you. You have no search warrant. Get out of my house" to both Officers Porebski and Berg. (*Id.* ¶¶ 28, 31.) Also, while in the hallway, Officer Berg heard Vanessa and Plaintiff Caroline Brown shouting. (*Id.* ¶ 29.) At some point, either Officer Porebski or Officer Daniels – who was on the telephone with Officer Porebski at that time – called for backup. (*Id.* ¶ 33; Defs.'

Stmt. Facts ¶ 41.)  The officers also attempted to move Plaintiffs out of the foyer of the apartment building and into the front yard.  (Pls.' Stmt. Facts ¶ 35.)  During this time, Marcus was shouting at Officers Berg and Porebski.  (*Id*. ¶ 39.)  Marcus' shouting led the crowd assembling in the front of the residence to also shout.  (*Id*. ¶ 41.)  Also, when Marcus, Stallworth, Brown, and Vanessa began shouting profanities, Officer Berg stopped his search of the laptops and joined Officer Porebski near the door.  (R. 68-1, Defs.' Rule 56.1 Stmt. Add'l Facts ¶ 15.)  After that, Officers Berg and Porebski gave verbal commands to the crowd to leave the area that the crowd ignored.  (*Id*. ¶ 16.)

Once outside, Officer Berg attempted to detain Marcus and a struggle ensued.  (*Id*. ¶ 20.) The parties dispute what happened next, although it is undisputed that there was a struggle between Officer Berg and Marcus on the stoop of the building.  (Defs.' Stmt. Facts ¶ 50.) Defendants concede that the facts concerning the use of force to effectuate the arrest of Marcus are in dispute, but that the parties do not dispute that the only officers who applied any force to effectuate Marcus' arrest were Officers Berg, Rooney, McGarry, or Porebski.  (*Id*. ¶¶ 51, 52, 53.) Throughout the struggle between Officer Berg and Marcus, Plaintiffs Alex Garcia, Brown, Stallworth and Vanessa were in the front area outside of the apartment building.  (*Id*. ¶ 46; Pls.' Stmt. Facts ¶ 37.)  Officer Porebski, who was then on the stoop, observed three or four individuals yelling and screaming while they advanced towards the stoop.  (Defs.' Stmt. Facts ¶¶ 43, 58.)  Garcia, for example, yelled at the officers to "get the fuck off my cousin."  (*Id*. ¶ 56.) Vanessa yelled "Fuck you.  This is our house.  Get the fuck out of here."  (Pls.' Stmt. Facts ¶ 57.)  Meanwhile, Officer Porebski repeatedly told the advancing group to get back.  (Defs.' Add'l Facts ¶ 25.)

While at the elementary school, Officers Gibbelina, McGarry, and Rooney heard the call for assistance over their radios. (Defs.' Stmt. Facts ¶ 47.) Upon their return to the apartment building, Officers Gibbelina, McGarry, and Rooney all observed that Marcus was on top of Officer Berg. (*Id*. ¶ 48.) Within one foot of where Marcus and Officer Berg were struggling, Officer Gibbelina saw several people surrounding Officer Porebski. (*Id*. ¶ 49.) After exiting the police vehicle, Officer Gibbelina addressed a hostile crowd forming in the street in front of the apartment building and Officers Rooney and McGarry ran to assist Officer Berg. (*Id*. ¶ 50.) The crowd that had gathered on the street violently yelled "fuck the police, fuck you guys." (Defs.' Add'l Facts ¶ 28.) Also, a hostile crowd had assembled in the yard next door to the residence. (Defs.' Stmt. Facts ¶ 58.)

Once the officers handcuffed Marcus, Officer Berg surveyed the yard and saw Officer Porebski, Vanessa, Brown, and Garcia shouting back and forth. (*Id*. ¶ 59.) At that point, Officer Berg made the decision to arrest Vanessa, Brown, and Garcia. (*Id.* ¶ 60; Pls.' Stmt. Facts ¶ 51.) Among the reasons that Officer Berg gave for the arrest was that he thought Vanessa, Brown, and Garcia were obstructing Officer Porebski from assisting with the arrest of Marcus because they had surrounded Officer Porebski and were shouting and screaming. (Defs.' Stmt. Facts ¶ 61.) Prior to arresting Vanessa, Officer Berg knew that she was a juvenile. (Pls.' Stmt. Facts ¶ 9.)

After his arrest, the police charged Marcus with battery and obstruction of a peace officer. (*Id*. ¶ 61; Defs.' Stmt. Facts ¶ 70.) The police charged Brown, Garcia, Stallworth, and Vanessa with obstruction of a peace officer. (Defs.' Stmt. Facts ¶ 70; Pls.' Stmt. Facts ¶¶ 63, 64, 67.) A Circuit Court of Cook County judge set the criminal trial for Marcus, Stallworth, and

Brown to commence on May 6, 2008, however, Brown began vomiting in the courtroom, so the judge excused the jury. (*Id*. ¶ 72.) Thereafter, Marcus, Brown, and Stallworth reached a deal with the prosecutors to complete 40 hours of community service in exchange for the prosecutors to strike the case off the call with leave to reinstate ("SOL"). (*Id*. ¶ 74.) Because Marcus and Stallworth had completed the court-ordered community service, a Circuit Court of Cook County judge SOL'd the criminal cases against them on July 7, 2008. (*Id*. ¶ 76.) Brown completed her community service two weeks later at which time the judge SOL'd her case. (*Id*.) Earlier, a Circuit Court of Cook County judge SOL'd Garcia's case on December 18, 2007. (*Id.* ¶ 78.) Defendant Officers did not swear out a criminal complaint against Vanessa. (*Id*.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"

*Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

**I.      Fourth Amendment Unreasonable Seizure Claims – Count II**

**A.            False Arrest Claims**

Defendant Officers move for summary judgment as to Plaintiffs' false arrest claims as alleged in Count II of the First Amended Complaint.  In response to Defendants' motion, Plaintiffs concede that there is no basis to go forward against Defendant Officers Sherlock, Rogus, and Askar as to their false arrest claims.  (R. 70-1, Resp., at 1.)  Therefore, the Court focuses on the conduct of the other Defendant Officers when they arrested Marcus, Vanessa, Garcia, Stallworth, and Brown because "[p]robable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983."  *Stokes v. Board of Educ. of the City of Chicago,* 599 F.3d 617, 622 (7th Cir. 2010); *see also Gonzalez v. City of Elgin,* 578 F.3d 526, 537 (7th Cir. 2009) (same).

In particular, "[p]robable cause is determined from the facts known to the officers at the time of the arrest" and an officer's reasons supporting an arrest must be objectively reasonable. *Fox v. Hayes,* 600 F.3d 819, 836, 838 (7th Cir. 2010).  Specifically, "probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred."  *Whitlock v. Brown,* 596 F.3d 406, 411 (7th Cir. 2010) (citing *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  "A police officer's probable cause determination depends on the elements of the applicable criminal statute."  *Stokes,* 599

F.3d at 622.

## 1.       Brown, Garcia, and Vanessa

Here, Defendant Officers charged Brown, Garcia, Vanessa, Marcus, and Stallworth with obstruction of a peace officer in violation of 720 ILCS 5/31-1(a), which states, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor."  Although the Illinois courts have held that Section 5/31-1(a) only prohibits a person from committing a physical act of obstruction, *see People v. McCoy,* 378 Ill.App.3d 954, 962, 317 Ill.Dec. 453, 881 N.E.2d 621 (Ill. 2008), other Illinois courts have concluded that "[p]assive acts that impede an officer's ability to perform his duties, such as repeatedly refusing an officer's order to exit a vehicle, may also violate section 31-1(a)."  *See People v. Ostrowski,* 394 Ill.App.3d 82, 98, 333 Ill.Dec. 139, 914 N.E.2d 558 (Ill. 2009); *see also Migliore v. Winnebago County,* 24 Ill.App.3d 799, 802, 321 N.E.2d 476 (Ill. 1974). Because the question of whether Vanessa, Brown, or Garcia committed a physical act of obstruction is factually disputed, Defendants argue that Officer Berg had an objectively reasonable basis to arrest Brown, Vanessa, and Garcia for disorderly conduct in violation of 720 ILCS 5/26-1.  *See Fox,* 600 F.3d at 837 ("an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect.") (emphasis in original); *see also Stokes,* 599 F.3d at 623 ("crime of disorderly conduct does not require an element of physical force").

Illinois' disorderly conduct statute states in relevant part that a "person commits

disorderly conduct when he knowingly [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). This statute "is intended to guard against 'an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.'" *Stokes,* 599 F.3d at 622 (citation omitted). At issue is not whether Vanessa, Brown, or Garcia actually committed the crime of disorderly conduct, instead, the Court must determine whether the facts taken in the light most favorable to Plaintiffs show that a reasonable person in Officer Berg's position could have had probable cause to believe that they engaged in disorderly conduct. *See id.*

At the time Officer Berg arrested Vanessa, Brown, and Garcia, they had been shouting obscenities and threats at the police officers while the officers were executing the search warrant and attempting to arrest Marcus. In addition, it is undisputed Officer Porebski was controlling the hostile crowd that had gathered in front of the search warrant's target location, including Vanessa, Brown, and Garcia, who were shouting and arguing with Officer Porebski. Based on these circumstances and viewing the facts in a light most favorable to Plaintiffs, a reasonable person in Officer Berg's position could have reasonably believed that Vanessa, Brown, and Garcia engaged in disorderly conduct by acting in an unreasonable manner resulting in a breach of the peace. *See Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008) (probable cause existed where crowd gathered after altercation, plaintiffs complained and yelled, police officers asked plaintiffs to leave the scene, and the police believed plaintiffs were aggravating chaotic and hazardous situation); *Mustafa v. City of Chicago,* 442 F.3d 544, 547-48 (7th Cir. 2006) (probable cause existed to arrest plaintiff who was at center of commotion and agitation). Because Officer Berg had probable cause to arrest Vanessa, Brown, and Garcia for disorderly

conduct in the context of the chaotic situation outside of the apartment building, the Court grants

Defendant Officers' summary judgment motion and denies Plaintiffs' summary judgment motion

as to Vanessa's, Brown's, and Garcia's false arrest claims as alleged in Count II of the First

Amended Complaint.

2.        **Marcus**

Similarly, construing the facts in the light most favorable to Plaintiffs, a reasonable

person in Officer Berg's position could have had probable cause to believe that Marcus had

engaged in disorderly conduct in violation of 720 ILCS 5/26-1(a)(1). Although the parties

dispute the force used to effectuate Marcus' arrest, undisputed evidence in the record shows that

after Marcus saw Officer Porebski in the living room, Officer Porebski stated that a search

warrant was being conducted and Marcus demanded to see the warrant. In addition, Officers

Porebski and Berg both told Marcus to leave the residence and in return, Marcus shouted

obscenities. Specifically, Marcus shouted "Fuck you. You have no search warrant. Get out of

my house" to the officers. The officers, however, did have a search warrant and pursuant to their

search, they had uncovered narcotics, bundled money, and drug paraphernalia. Meanwhile, as

Officers Berg and Porebski attempted to move Marcus out of the foyer of the apartment building

and into the front yard, Marcus continued shouting at them. Indeed, it is undisputed that

Marcus' shouting led the hostile crowd assembling in the front of the residence to also shout.

During this chaotic situation, only Officers Porebski and Berg were at the residence because the

other officers had either returned to the 17th District police station or gone to the nearby

elementary school. Once Officers McGarry, Rooney, and Gibbelina returned, the situation had

escalated.

Based on the facts known to Officer Berg at the time of the arrest, a reasonable person in Officer Berg's position could have probable cause to believe that Marcus was engaged in disorderly conduct when he shouted threats at the police officers in the context of the hostile crowd gathering around the apartment building. *See Montano,* 535 F.3d at 569; *Mustafa,* 442 F.3d at 547-48. Because there was probable cause to arrest Marcus for disorderly conduct under the circumstances, his false arrest claim fails and the Court grants Defendants' summary judgment motion and denies Plaintiffs' summary judgment motion as to this claim.

### 3. Stallworth

As discussed, the police officers charged Stallworth with obstruction of a peace officer in violation of 720 ILCS 5/31-1(a), and unlike Vanessa, Garcia, and Brown, there are undisputed facts in the record that Stallworth committed a physical act or exertion when interacting with the police officers. *See In re Jerome S.,* 372 Ill.App.3d 642, 647, 311 Ill.Dec. 220, 867 N.E.2d 1206 (Ill. 2007) (obstruction implies some physical act or exertion). In particular, Stallworth testified that during the altercation between the police officers and Marcus, he lunged at an officer to prevent the officer from using a taser gun during the arrest of Marcus and that his forearm contacted the officer's forearm. (Defs.' Stmt. Facts ¶ 54.) Construing this evidence in a light most favorable to Stallworth, a reasonable person in Officer McGarry's position could reasonably believe that Stallworth physically obstructed the performance of the police officers as they attempted to arrest Marcus when he lunged at an officer to prevent him from using a taser. *See McCoy,* 378 Ill.App.3d at 962. At the very least, a reasonable person in Officer McGarry's position could reasonably believe that Stallworth engaged in disorderly conduct under the circumstances. *See Montano*, 535 F.3d at 569; *Mustafa,* 442 F.3d at 547-48.

Finally, Stallworth argues that – assuming he was obstructing Marcus' arrest – any arrest was unlawful, and thus the police did not have probable cause to arrest him. Stallworth's argument fails because it is illegal to resist or obstruct an arrest regardless of the legality of the underlying arrest. *See People v. Villarreal,* 152 Ill.2d 368, 379-80, 178 Ill.Dec. 400, 604 N.E.2d 923 (Ill. 1992); *see also McCoy,* 378 Ill.App.3d at 962 (physical acts of obstruction can support conviction even if underlying attempted arrest was unwarranted). As such, the Court grants Defendants' summary judgment motion as to Stallworth's false arrest claim as alleged in Count II of the First Amended Complaint.[2]

###    B.      MaLave's Unreasonable Seizure Claim

Defendant Officers never arrested MaLave, and thus she did not allege a false arrest claim against them. Instead, MaLave argues that Officers Berg and Porebski violated her Fourth Amendment rights because after the officers executed the search warrant, Officers Berg and Porebski conducted an additional search and consequently continued to seize her home and personal property without a legal basis. Plaintiffs, however, neither alleged this additional Fourth Amendment claim in their First Amended Complaint nor otherwise put Defendants on notice of this claim and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Although a plaintiff cannot amend a complaint via a summary judgment motion, *see Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 412 (7th Cir. 2009), the Court addresses Plaintiffs' argument for the sake of

---

[2] Because the Court has determined that Defendant Officers had probable cause to arrest Plaintiffs, the Court need not address Defendants' argument under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that is based on non-controlling legal authority. *See Gilles v. Davis,* 427 F.3d 197 (3d Cir. 2005).

completeness.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures...."  U.S. Const. amend. IV.  In the context of property interests, the Supreme Court has defined the Fourth Amendment's use of the term "seizure" as "some meaningful interference with an individual's possessory interests in [his] property."  *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).  The Seventh Circuit has interpreted a person's "effects" to include personal property, such as a television or couch, and has held that such items are protected by the Fourth Amendment from unreasonable seizures.  *See Pepper v. Village of Oak Park,* 430 F.3d 805, 809 (7th Cir. 2005).

MaLave argues that assuming, *arguendo*, that Defendant Officers' search warrant was valid, the officers' seizure of the laptops after the initial search had been completed was warrantless and unreasonable under the circumstances.  She also maintains that the continued seizure of her home while the officers seized the laptops was unreasonable.  MaLave's argument fails because Defendant Officers had probable cause to remain at her residence and to seize MaLave's laptop computers under the plain view doctrine.  Specifically, under the plain-view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  *Gentry v. Sevier,* 597 F.3d 838, 849 (7th Cir. 2010) (quoting *Minnesota v. Dickerson,* 508 U.S. 366, 374-75, 113 S.Ct. 2130, 2136-37, 124 L.Ed.2d 334 (1993)).

Here, the undisputed evidence in the record reveals that while executing the search

warrant, Officer Porebski observed electronic equipment in the apartment that he thought might be connected to a rash of burglaries.  Also, Officer Daniels observed a number of laptops and electronic equipment in plain view during the search and was aware of a pattern of burglaries in the area involving electronic equipment, including two burglaries that had occurred days earlier on the same block as MaLave's residence.  (Defs.' Stmt. Add'l Facts ¶¶ 4, 5; Defs.' Stmt. Facts ¶ 25.)  Officer Daniels knew that one of the items stolen was a flat screen television and he plainly saw a flat screen television lying against the wall.  (*Id*.)  Officer Daniels also noticed numerous laptop computers and video games in plain view strewn throughout the apartment in the various bedrooms.  (Defs' Add'l Facts ¶ 5.)  He noticed that none of the equipment was plugged in and was not set up for use.  (*Id*. ¶ 6.)  When he questioned the occupants of the residence, including MaLave, none of them could explain the electronic equipments' origins.  (*Id*. ¶ 7.)  Also, Officers Porebski and Daniels talked to one another and shared information concerning the robberies.  (Defs.' Stmt. Facts ¶ 26.)  After that, Officer Daniels returned to the 17th District police station to review the recent burglary reports to verify if the electronics matched the items from the reports.  (*Id*.)  Finally, Officer Berg was aware that the other officers had found items that they thought were stolen and the officers told him that there were numerous laptops in one of the bedrooms.  (Defs.' Add'l Facts. ¶ 13.)

Under these circumstances, Defendant Officers were lawfully in the residence based on the original search warrant and the laptop computers were in plain view throughout the apartment while the officers were executing the warrant.  The fact that Officer Daniels went back to the police station to investigate the equipment does not render the seizure unreasonable because the incriminating character of the laptops was immediately apparent based on the

officers' knowledge of items that had been stolen from homes on the same block.  *See Russell v. Harms,* 397 F.3d 458, 465 (7th Cir. 2005) ("The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has 'probable cause to believe that the item is linked to criminal activity.'") (citation omitted).  Finally, Officers Porebski's and Daniels' knowledge leading to their probable cause determination is imputed upon Officer Berg under the collective knowledge doctrine.  *See United States v. Whitaker,* 546 F.3d 902, 905 (7th Cir. 2008) ("under the collective knowledge doctrine, law enforcement officers are considered to possess information known to other officers but not known to them").  Accordingly, any argument that Officer Berg needed independent probable cause to seize the items is misplaced.

Based on these undisputed facts, the officers were lawfully in MaLave's apartment and had probable cause to seize the electronic items without a warrant as a matter of law.  The Court therefore denies Plaintiffs' summary judgment motion as to MaLave's unreasonable seizure claim and grants Defendants' summary judgment motion as to Count II.

## II.      Malicious Prosecution Claim – Count IV

Next, Vanessa, Garcia, Marcus, Brown, and Stallworth allege that Defendant Officers' conduct constituted malicious prosecution in violation of Illinois law.  To establish a malicious prosecution claim under Illinois law, Plaintiffs must show:  "(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendants' part; and (5) damages.  *See Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 863 (7th Cir. 2010) (citing *Ross v. Mauro Chevrolet,* 369 Ill.App.3d 794, 308 Ill.Dec. 248, 861 N.E.2d 313, 319 (Ill. 2006)).  Because the Defendant Officers had probable cause to arrest

Plaintiffs, their malicious prosecution claim necessarily fails. *See Stokes,* 599 F.3d at 626. The Court therefore grants Defendants' summary judgment motion as to Count IV of the First Amended Complaint and dismisses Plaintiffs' malicious prosecution claim with prejudice.

**III.      Intentional Infliction of Emotional Distress Claim – Count VI**

Plaintiffs also allege that Defendant Officers' conduct caused them severe emotional distress in Count VI of the First Amended Complaint. To establish an intentional infliction of emotional distress ("IIED") claim under Illinois law, Plaintiffs must show that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El,* 602 F.3d at 864 (citing *Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 22, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (Ill. 1992)). As the Supreme Court of Illinois explains: "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term emotional distress, these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill. 1976) (internal quotation marks omitted); *see also Honaker v. Smith,* 256 F.3d 477, 495 (7th Cir. 2001) (plaintiffs' complaints "that a defendant's actions caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated or nervous, [] have been found not to have stated a claim under Illinois law.").

In their First Amended Complaint, Plaintiffs allege that Defendant Officers' beating, handcuffing, and kicking of Marcus, along with arresting fourteen-year-old Vanessa, constituted extreme and outrageous conduct calculated to cause emotional distress. (R. 13-1, First Am.

Compl. ¶ 55.)  In their response to Defendants' summary judgment motion, however, Plaintiffs do not argue or present any evidence raising a genuine issue of material fact for trial that Vanessa, Marcus, Stallworth, Garcia, and MaLave actually suffered any emotional distress.  *See, e.g., Bristow v. Drake Street Inc.,* 41 F.3d 345, 350 (7th Cir. 1994) (evidence that plaintiff stopped talking and eating, was distraught, lost weight, was not functioning, was constantly crying, and had stomach pains and vomiting constituted severe emotional distress).  In addition, Plaintiffs fail to present any causation evidence in support of their IIED claims.  *See, e.g., Naeem v. McKesson Drug Co.,* 444 F.3d 593, 607 (7th Cir. 2006) (psychiatrist's testimony that post-traumatic stress disorder and major depressive disorder traced to employer's conduct established causation).  Because Plaintiffs have failed to argue or present facts raising a genuine issue of material fact for trial that Defendant Officers' conduct caused Vanessa, Marcus, Stallworth, Garcia, and MaLave severe emotional distress, their IIED claims against Defendant Officers fail. *See Celotex,* 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim") (emphasis in original).

Finally, the only argument Plaintiffs make that is supported by the record is that Defendant Officers' conduct made Brown vomit in court.  The fact that Brown vomited on the day of her trial, without more, is "not evidence of the type of severe distress, unendurable by a reasonable person, that is actionable under Illinois law."  *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1030 (7th Cir. 2006).  Accordingly, the Court grants Defendant Officers' summary judgment motion as to Plaintiffs' IIED claim as alleged in Count VI of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for summary judgment.

**Dated:** June 14, 2010

ENTERED

AMY J. ST EVE
United States District Judge